SARAH EFFIE CAVANAUGH, APPELLANT *v.* O. S. SALISBURY, RESPONDENT.

EQUITABLE ACTION—EVIDENCE—FINDINGS—WHEN NOT DISTURBED —PARTNERSHIP—AUTHORITY OF PARTNER—TO BIND FIRM—NON-TRADING PARTNERSHIP—NO PRESUMPTION OF RIGHT OF ONE TO BIND ALL—BURDEN OF PROOF—ON ONE ASSERTING LIABILITY.

*Equitable Action—Evidence—Findings—When not Disturbed.*
   Where upon a careful examination and consideration of all the evidence in an equity case, the conclusion is irresistable that the proof is ample to warrant the findings of the trial court, they will not be disturbed.

*Partnership—Authority of Partner—To Bind Firm.*
   A partner without special authority can bind the firm only within the scope of the business, and the firm, in the absence of ratification, is not bound by any transaction of a partner outside the real or apparent scope.

*Non-Trading Partnership—No Presumption of Right of one to Bind All—Burden of Proof—On one Asserting Liability.*
   Where a partnership is engaged in the stage business, or the carrying of mails, passengers and express, a partner has *prima facie*, no authority to bind the firm or another partner in a transaction relating to the business of mining, and he who would seek to hold the firm liable by virtue of such transaction, has the burden to show that the contracting partner had the authority to enter therein; no such power is implied in a partner in a non-trading partnership.

(Decided Dec. 6, 1900.)

Appeal from the Third District Court Salt Lake County. Hon. Ogden Hiles, *Judge.*

This was an equitable action founded upon contract. From a judgment in favor of defendant plaintiff appealed. *Affirmed.*

*Fank Hoffman, Esq.*, for appellant.

"Although a firm is not liable to make good trust money applied to its use by one of its members in breach of trust reposed in him, unless the firm can be implicated in the breach of trust, this doctrine will not preclude a *cesti que* trust from following his own money into the hands of the firm, and demanding it back, if he can show that the firm still has it, and the firm did not come by it by purchase for value without notice. The true owner of money traced to the possession of another has the right to have it restored not because it is a debt, but because it is his money. His right is incidental to this ownership, and whether the money is traced to the hands of a single individual, or to the hands of a firm, is wholly immaterial." Lindley on Partnership, section 162; *Strang* v. *Branden,* 144 U. S. 555.

*Messrs. Dickson, Ellis & Ellis,* for respondent.

The partnership of Gilmer, Salisbury & Co., was a non-trading partnership, and no one of the partners could without the consent of all sell or in anyway dispose of any of the partnership. Bates Par., Sec. 329.

The partnership being non-trading, each partner has *prima facie* no authority to bind the firm. Bates Par. Sec. 329.

In this class of partnerships the rule is limited as above stated, and the burden of proof was upon the appellant to show authority in J. T. Gilmer to make and sign the firm's name to the writing in order to bind the partnership. In this there is a complete failure of proof.

But again should the general rule be invoked and this court, hold the partnership a trading one, then the rule would be that every partner is the general agent of the

firm, to carry out its objects and transact its business in the usual and ordinary way, and within the scope of its ordinary business.     Bates Par., Sec. 315.

Almost all partnerships are, in one sense, particular partnerships.    It is rare that more than one branch of business is in view or that all varieties of trade are embraced, and the intrinsic characteristics of well known callings are recognized as presenting limitations.     Bates Par., 317; *Irwin* v. *Williar*, 110 U. S. 499.

BARTCH, C. J.

This is an equitable action founded upon contract. Originally the suit was brought against O. J. Salisbury, Monroe Salisbury and Katherine C. Belcher, administratrix of the estate of John T. Gilmer, deceased, defendants. Afterwards Mary E. Gilmer, Wells, Fargo & Co., and John E. Dooley were also made defendants, and a trial was had, but before the entry of final judgment the case was settled and dismissed by stipulation, as to all the defendants, except O. J. Salisbury and Monroe Salisbury, the plaintiff reserving the right to prosecute the action against them to final determination.    Thereupon the suit was prosecuted against the defendant O. J. Salisbury, and judgment entered in his favor.    From that judgment this appeal is taken by the plaintiff.

The contract out of which the controversy arose, reads as follows:

"The undersigned have this day sold to Michael Cavanaugh one thousand (1,000) shares of the capital stock of the Highland Mining Company, of Deadwood, Dakota, for the sum of nine thousand dollars ($9,000) and have received payment in full therefor.

"It is understood that said stock is free from assessments to this date.    The said one thousand shares is to

be held in pool subject to the same terms as the bulk of the stock, and in case of the sale of the whole or any part of the pooled stock, said Cavanaugh is to receive his pro rata of the proceeds of stock sold—and in case the stock is issued to owners from the pool, without a sale, the one thousand shares are to be issued to Cavanaugh in the same way, and at the same time as to other owners of stock.

"Dated March 4, 1880.

"GILMER, SALISBURY & Co."

The plaintiff, who is the sole heir of Michael Cavanaugh, deceased, seeks to recover the one thousand shares of stock mentioned in this contract, and to compel an accounting for all the dividends paid thereon.

It will be noticed that the contract was executed in the name of Gilmer, Salisbury & Co. That company, at the time of the execution of the instrument was a partnership, and its individual members were John T. Gilmer, O. J. Salisbury, the defendant, and Monroe Salisbury. The firm was engaged in the stage business, carrying mails, passengers and express. The contract, as shown by the evidence, was made and executed by John T. Gilmer, he signing the firm name to it, and the main issues at the trial were whether or not the firm, and the individual members thereof, were bound by the terms of the agreement, and whether or not the firm or the individual members thereof have received any benefits from the shares of stock alleged in the contract to be held in trust for Michael Cavanaugh.

Respecting these issues the court, in substance, found that the firm of Gilmer, Salisbury & Co. did not for a valuable consideration or otherwise, execute the contract or declaration of trust, or deliver the same to Michael Cavanaugh; that the firm did not, for value, or otherwise,

agree to deliver to Cavanaugh the 1,000 shares of stock of the Highland Mining Company, or any number of shares, or receipt for the stock or any part thereof; that the firm did not agree to hold the stock in trust for Cavanaugh under the pool agreement, or when the pool should be dissolved, or distribution of stock made, that Cavanaugh should receive the 1,000 shares, or the dividends paid thereon; and "that said John T. Gilmer, in his lifetime, signed the name of Gilmer, Salisbury & Company to said agreement of March 4th, 1880, without the knowledge or consent of the defendant, Orange J. Salisbury, and that the said firm or partnership of Gilmer, Salisbury & Company did not receive any of the shares of stock mentioned in said contract of March 4th, 1880, nor any of the dividends or profits accruing or paid thereon, nor did the said defendant, Orange J. Salisbury, receive any portion of said shares of stock, or any part of the dividends or profits growing or accruing or paid thereon, but that the said John T. Gilmer did receive said shares of stock mentioned in said contract of March 4th, 1880, and received from said Michael Cavanaugh at the date of said contract of March 4th, 1880, the nine thousand dollars ($9,000) mentioned therein, and at that date used and appropriated the same to his own private and personal uses and without the knowledge or consent of said Orange J. Salisbury, and that said contract or trust agreement of March 4th, 1880, was not made by said John T. Gilmer for and in behalf of said Gilmer, Salisbury & Company, or said Orange J. Salisbury."

The appellant insists that the findings are not supported by the proof. Upon careful examination and consideration of all the evidence, however, the conclusion is irresistible that the proof is ample to warrant the court in making the findings of fact referred to and quoted. So,

without reference to the evidence in detail, it is clear that the court was warranted in deciding the issues, mentioned, in favor of the defendant.    It is true the testimony shows that the members of the firm of Gilmer, Salisbury & Co., first Gilmer and Monroe Salisbury, and afterwards O. J. Salisbury, were individually interested, and each had a large amount of stock in his own right in the Highland Mining Company.    They were likewise interested in other mining concerns, but the evidence fails to show that Gilmer, Salisbury & Co., was so interested, as a firm, in the Highland Mining Company, or any other mining corporation, or that the firm, as such, did any mining business whatever.

Nor does the proof show that the contract in question was executed or delivered by authority of the firm, or of defendant O. J. Salisbury, or with his knowledge or consent, or that the instrument sued upon was within the scope of the business of the partnership, or that the firm, or the defendant Salisbury, ever received the stock, or the money or dividends, or any part thereof, mentioned in the writing.    On the contrary, it appears from the testimony that John T. Gilmer made and entered into the contract as an individual affair of his own, and signed the firm name to it, without any authority of the firm, and that the defendant Salisbury was not aware of the execution of such an instrument until a long time thereafter he was informed of its existence by the witness McCornick, when he promptly repudiated the transaction.    The witness McCornick, who was guardian of the plaintiff, before she became of age, on this point in part, testified:-

"I remember talking with John T. Gilmer during my guardianship about this paper in this city.    I don't think that I showed him the paper; I think I called his attention to the contents.    He simply stated that it was a mat-

ter of his own.   Prior to that time I had taken this paper and showed it to Mr. O. J. Salisbury.   I think I told him that O. J. Salisbury told me that he knew nothing whatever of the existence of the paper."

On cross-examination, the witness, among other things, said: "Mr. Gilmer said that it was a deal that he had with Cavanaugh personally.   At the time I had the conversation with Mr. Gilmer it was in my official capacity as guardian of the minor.   I don't remember his making any objection to the claim at that time, simply answering that it was a deal that he had with Cavanaugh—a personal matter of his own."

From this and other evidence in the record, it is clear that neither the firm, nor any member thereof, except Gilmer, had anything to do with the writing, in question, or received any benefit because thereof.   It is further apparent from the proof that the firm of Gilmer, Salisbury & Co. was a non-trading partnership, and that the contract, because of which this controversy arose, was not within the scope of its ordinary business.   A partner without special authority can bind the firm only within the scope of the business, and the firm, in the absence of ratification, is not bound by any transaction of a partner outside the real or apparent scope.   Where, therefore, as in this case, a partnership is engaged in the stage business, or the carrying of mails, passengers and express, a partner has *prima facie*, no authority to bind the firm or another partner in a transaction relating to the business of mining, and he who would seek to hold the firm liable, by virtue of such transaction, has the burden to show that the contracting partner had the authority to enter therein. The law in the case of a non-trading partnership implies no such power in a partner.   Bates on Partnership Secs.,

317, 327; *Skillman* v. *Lackman*, 23 Cal. 199; *Irwin* v. *Williar*, 110 U. S. 499.

Nor has the appellant shown by the evidence, or otherwise, that Gilmer, in the present instance, was authorized to bind the firm or the individual members thereof.

We are of the opinion that the proof in this case shows no right of recovery, against the respondent, and that the findings of fact are sufficiently supported by the testimony. We do not, therefore, consider it necessary to discuss the remaining questions presented.

The judgment is affirmed with costs.

MINER, J. and BASKIN, J. concur.